UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CIARA STAFFORD,

      *Plaintiff*,

  v.

FISERV SOLUTIONS LLC and CLOVER NETWORKS, INC.,

      *Defendants*.

No. 24-cv-10009 (MEF)(JRA)

**OPINION and ORDER**

\*   \*   \*

For the purposes of this brief Opinion and Order, the Court assumes full familiarity with the allegations and procedural history of this case.

\*   \*   \*

The Plaintiff[1] sued her former employer,[2] in part for allegedly retaliating against her in violation of the New Jersey Law Against Discrimination, because she made a sexual harassment complaint against one of her coworkers ("the Coworker"). See Complaint (ECF 1) ¶¶ 124-28.

\*   \*   \*

---

[1] Ciara Stafford.

[2] There is some complexity as to the exact entity that employed the Plaintiff. See Motion to Dismiss (ECF 8-1) at 3 n.3. But that does not matter for now. The Plaintiff's former employer is one (or perhaps two) of the Defendants here. The Defendants are Fiserv Solutions LLC and Clover Networks, Inc. The former employer is referred to, for now, as "the Company." The Court does not differentiate for present purposes between the Company and the Defendants.

The Defendants now move to dismiss the retaliation claim (Count III) under Federal Rule of Civil Procedure 12(b)(6). See Motion to Dismiss at 1; Reply Brief (ECF 15) at 1-2.

The motion is granted.

\* \* \*

To make out a retaliation claim under the New Jersey Law Against Discrimination,[3] N.J.S.A. §§ 10:5-1 to -49, a plaintiff must allege, among other things, that he or she was "subjected to an adverse employment decision." Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013).

An "adverse employment decision"[4] is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Roa v. Roa, 200 N.J. 555, 575 (2010) (adopting the Title VII retaliation standard as set out in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)) (cleaned up).

Here, the Plaintiff points to two things that are said to amount to an "adverse employment decision."

\* \* \*

The first:

---

[3] The parties' briefs assume that New Jersey law governs. See Motion to Dismiss at 1; Opposition Brief (ECF 13) at 18. Therefore, it does. See Marino v. Brighton Gardens of Mountainside, 697 F. Supp. 3d 224, 229 (D.N.J. 2023).

[4] New Jersey courts sometimes use "materially adverse [action]" in lieu of "adverse employment decision."  The terms appear to be treated as interchangeable.  Compare Roa v. Roa, 200 N.J. 555, 575 (2010) (materially adverse action), Morris v. Rutgers-Newark Univ., 472 N.J. Super. 335, 352 (App. Div. 2022) (same), and Prager v. Joyce Honda, Inc., 447 N.J. Super. 124, 140 (App. Div. 2016) (same), with Battaglia, 214 N.J. at 547 (adverse employment decision), Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 27 (2002) (same), and Young v. Hobart W. Grp., 385 N.J. Super. 448, 465 (App. Div. 2005) (same).

2

Per the Complaint, the Coworker repeatedly harassed the Plaintiff.[5]  See Complaint ¶¶ 21-24, 45-49, 58-82.

The Plaintiff complained to the Company's HR department.  See id. ¶¶ 84-89.  The Company investigated.  See id. ¶ 92.  And it "'substantiate[d]' most of [the Plaintiff's claims]."  Id. ¶ 94.  As a result of its findings, the Company offered to move the Plaintiff to a desk further away from the Coworker.  See id. ¶ 94.  She agreed to move.  See id.

During the course of the HR investigation, the Plaintiff was allowed to work from home.  See id. ¶¶ 92-93.  Several days after she physically returned to work, the Plaintiff came upon the Coworker "sitting in her new cubicle, causing her to have a panic attack."  Id. ¶ 97.  This, it is said, was part of an effort to "intimidate."  See Opposition Brief at 21.

Typically, a retaliatory adverse employment decision is one undertaken by an employer or by a workplace supervisor.  See, e.g., Burlington, 548 U.S. at 57-59; Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 173 (2011); Roa, 200 N.J. at 575; Moore v. City of Phila., 461 F.3d 331, 345-49 (3d Cir. 2006); cf. Maimone v. City of Atl. City, 188 N.J. 221, 236-37 (2006) (Conscientious Employee Protection Act).

Here, the alleged adverse employment decision was the Coworker's sitting in the Plaintiff's seat.

But there are no allegations this was done at the direction of the Company or of any workplace supervisors.  There are no allegations that directly suggest the Coworker's sitting in the Plaintiff's new seat can be imputed to the Company, that it was part of an effort by the Company to retaliate against her.

In circumstances like this, the key case is Moore v. City of Philadelphia, 461 F.3d 331 (3d Cir. 2006).

There, the plaintiffs sued their employer for Title VII[6] retaliation after a number of administrative complaints had been

---

[5]  Because this is a motion to dismiss, the Court must treat all of the Complaint's allegations as true.  See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009).

[6]  Retaliation claims under Title VII and the New Jersey Law Against Discrimination are often analyzed together.  See Roa, 200 N.J. at 573-75; Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 372 & n.5 (2007); see generally Grigoletti v. Ortho

filed.  See id. at 340-41, 343.  Part of the alleged retaliation was abuse by coworkers.  See id. at 349-50.

As to the coworker harassment, the Third Circuit held in Moore that "[a]n employer may be liable under Title VII for retaliatory harassment perpetrated by an employer's co-workers . . . if there is a basis for employer liability for the coworker's conduct."  Id. at 349; see also Estabrook v. Safety & Ecology Corp., 556 F. App'x 152, 157 (3d Cir. 2014) (seemingly applying a similar standard to a New Jersey Law Against Discrimination claim).

And in Moore, the Court of Appeals held, there was no "basis for employer liability" --- in part because the employer took reasonable steps to stop the retaliation.  See 461 F.3d at 350.

In coming to this decision, the Third Circuit suggested that an employer can be liable on a retaliation theory "where supervisors knew or should have known about the co-worker harassment, but failed to take prompt and adequate remedial action to stop the abuse."  Id. at 349; cf. C.V. by & through C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 312 (2023) (in the context of a sexual harassment, not retaliation, claim under the New Jersey Law Against Discrimination); Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 108 (3d Cir. 2009) (in the context of a sexual harassment, not retaliation, claim under Title VII).

But in this case, the Plaintiff makes no allegations that the Defendants "knew or should have known" that the Coworker would take her seat.

Indeed, there are no allegations that she told anyone about the incident at the time it happened or at a later meeting.  See Complaint ¶¶ 97-98, 102-05.

And there are no allegations from which it can be plausibly inferred that the Company or its workplace supervisors "should have" been aware that the Coworker would sit in the Plaintiff's new seat or was sitting there.

And without some sort of knowledge along those lines, the Company cannot be faulted for failing to "take prompt and

---

Pharm. Corp., 118 N.J. 89, 97 (1990) ("In a variety of contexts involving allegations of unlawful discrimination, this Court has looked to federal law as a key source of interpretive authority.") (cleaned up).

4

adequate remedial action." Moore, 461 F.3d at 350. It would have no reason to think that was necessary.

Bottom line: to the extent the Plaintiff claims that there was retaliation that is chargeable to the Company because the Coworker sat at the Plaintiff's new desk, that claim does not work.

\* \* \*

The Complaint also alleges that the Coworker spread improper rumors to other coworkers about the Plaintiff. See Complaint ¶¶ 100-01, 105.

This, it is said, also adds up to an "adverse employment decision."

But again, this alleged retaliation was said to have been done by the Coworker. Not by the Company or a supervisor. And not at the behest of the Company or a supervisor.

In that circumstance, the Third Circuit has suggested (as noted above) that a retaliation claim can be pressed against the employer if (1) it knew or should have known about the conduct, but (2) "failed to take prompt and adequate remedial action." Moore, 461 F.3d at 350.

But even if the first box is checked here, the second is not.

To see why, note that there are are no allegations that the Company or its supervisors knew about the rumors when they were allegedly being spread by the Coworker.

But per the Complaint, the Company later learned about the rumors. That information came from the Plaintiff. See id. ¶¶ 104-05. She told the Company's HR director about the rumors. See id.

From that point, did the Company "fail[] to take prompt and adequate remedial action?" Moore, 461 F.3d at 350.

No. If anything, the opposite is alleged.

The Complaint alleges that the Plaintiff asked for a meeting with the HR director to discuss the rumors. See Complaint ¶¶ 104-05. During the meeting, the director said that she would undertake another investigation. See id. ¶ 106.

5

The investigation took about a week. See id. ¶¶ 98-99, 102-07. It concluded that the Coworker had indeed said certain things about the Plaintiff to their colleagues. See id. ¶ 107.

After the investigation, a Company manager "talked to" the Coworker "and told him that this type of behavior was not acceptable." See id.

And after that, there are no further allegations in the Complaint as to harassment by the Coworker or rumors from the Coworker --- or indeed of interactions of any kind between the Plaintiff and the Coworker.

In short, the Complaint affirmatively alleges "adequate remedial action," Moore, 461 F.3d at 350, on the part of the Company.

Therefore, the Complaint cannot support a retaliation claim against the Company based on the Coworker's alleged rumor-spreading.

                    *    *    *

The motion to dismiss the retaliation claim (Count III) is granted.[7]

IT IS on this 11th day of July, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

[7] A final point. The Plaintiff has alleged that she told her immediate supervisor about the Coworker's harassment months before she lodged a formal complaint with HR. See Complaint ¶¶ 27-31, 42, 62-63. The supervisor, it is said, did not act on her complaints. See id. ¶¶ 32, 43, 64. In her brief, the Plaintiff does not argue that this inaction counts as an "adverse employment decision." Therefore, the Court does not take that up. See Wu v. GSX Techedu Inc., 738 F. Supp. 3d 527, 559-60 (D.N.J. 2024) (discussing the party-presentation principle).

6