UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CIARA STAFFORD,

    *Plaintiff*,

  v.

FISERV SOLUTIONS LLC and CLOVER NETWORKS, INC.,

    *Defendants*.

No. 24-cv-10009 (MEF)(JRA)

**OPINION and ORDER**

\*   \*   \*

For the purposes of this brief Opinion and Order, the Court largely assumes familiarity with the procedural history and allegations of this case.

\*   \*   \*

The Plaintiff sued her former employer[1] for, among other things, retaliating against her after she complained about sexual harassment. See Plaintiff's First Amended Complaint

---

[1] It is not clear which entity or entities formally employed the Plaintiff. Compare Plaintiff's Brief in Opposition to Defendants' Motion to Partially Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) (ECF 47) at 1 n.1 with Defendants' Memorandum of Law in Support of Their Motion to Partially Dismiss Plaintiff's Amended Complaint with Prejudice (ECF 43-1) at 5 n.3. This does not matter for now. The Court refers to the former employer as "the Company" and does not differentiate between the two entities named as Defendants here, Fiserv Solutions LLC and Clover Networks, Inc. Which entity formally employs the Plaintiff can be nailed down later, as necessary.

("Complaint") (ECF 38) ¶¶ 136-140. This allegedly violated the New Jersey Law Against Discrimination. See id. ¶ 138.

After a prior decision from the Court, see Stafford v. Fiserv Sols. LLC, 2025 WL 1920940 (D.N.J. July 11, 2025), the complaint was amended, and the Company now moves to dismiss the Plaintiff's retaliation claim under Federal Rule of Civil Procedure 12(b)(6). See Defendants' Memorandum of Law in Support of Their Motion to Partially Dismiss Plaintiff's Amended Complaint with Prejudice ("Company's Brief") (ECF 43-1) at 1.

The motion is granted in part and denied in part.

\*   \*   \*

The relevant allegations for now are as follows.[2]

The Plaintiff reported that she was being sexually harassed by a coworker ("Coworker"). See Complaint ¶ 96.

The Company investigated, see id. ¶ 98, "substantiate[d] most" of what had been reported, id. ¶ 99, and looked to separate the Plaintiff from the Coworker. To accomplish this, the Plaintiff's workspace was physically moved. See id. ¶¶ 99, 102.[3]

But then the Plaintiff found her Coworker "sitting in [the Plaintiff's] new cubicle in an attempt to intimidate her." Id. ¶ 104.

The Plaintiff told her supervisor what had happened, see id. ¶¶ 30, 108-09, and he said he would "report the situation to [HR]." Id. ¶ 110.

Over the following days, the Plaintiff learned that her Coworker had been telling their colleagues that "he did not understand why [the Plaintiff] had reported him for sexual harassment when

---

[2] Because this is a motion to dismiss, the Court treats all the allegations as true. See McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009). Whether they are in fact true is a question for later.

[3] It appears that the Company's workers sat together in a room with an "open" floor plan. See Complaint ¶ 20. And note: the Company let the Plaintiff choose whether she or her Coworker should be moved. See id. ¶ 99. The Plaintiff opted to have her seat moved. See id.

2

she was actually the one constantly telling him that she wanted to have sex with him[.]" Id. ¶ 116.

The Plaintiff reported this to a Company HR official. See id. ¶¶ 120-22. The Company again investigated, see id. ¶ 123, determined that the referenced statements had been made, see id. at ¶ 124, and "told [the Coworker] that this type of behavior was not acceptable." Id.

The Plaintiff continued working at the Company for around ten more months and then resigned. See id. ¶ 126.

\*   \*   \*

In light of the above, the Plaintiff sued the Company. She claims the Company is liable under the New Jersey Law Against Discrimination for the Coworker's alleged retaliatory harassment, for three distinct reasons. See Plaintiff's Brief in Opposition to Defendants' Motion to Partially Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) ("Plaintiff's Brief") (ECF 47) at 9-12, 15-16.

Take these up just below.

\*   \*   \*

First, the Plaintiff seeks to hold the Company liable for the Coworker's "sitting in her new cubicle in an attempt to intimidate her," Complaint ¶ 104, after the Company decided to separate the Plaintiff and the Coworker. See Plaintiff's Brief at 11-12.

The background law here:

To state a New Jersey Law Against Discrimination retaliation claim, a plaintiff must plausibly allege three things. First, that she "engaged in a protected activity known to the employer." Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013) (cleaned up). Second, that she "was subjected to an adverse employment [action]." Id. (cleaned up). And third, that "there is a causal link between the protected activity and the adverse employment action." Id.

In cases like this one, where a plaintiff seeks to hold an employer liable for retaliatory harassment by a coworker, a fourth thing must be plausibly alleged, too.

Namely, that the employer "knew or should have known about the coworker harassment, but failed to take prompt and adequate

3

remedial action to stop the abuse." Moore v. City of Philadelphia, 461 F.3d 331, 349 (3d Cir. 2006) (cleaned up).[4]

Come back now to this case.

The Plaintiff argues, as noted, that the Company is liable in part because the Coworker sat in her seat after the Company separated them --- in alleged retaliation for her (the Plaintiff) reporting his (the Coworker's) prior conduct to Company officials. See Plaintiff's Brief at 9-12.

As to this, the Company's only substantial argument[5] relates to the fourth part of the four-part test --- whether it "knew or should have known about the coworker harassment, but failed to take prompt and adequate remedial action to stop the abuse." Moore, 461 F.3d at 349 (cleaned up).

But the Company's argument does not work.

"[A]n employee's knowledge of sexual harassment will be imputed to the employer where [a report is made to an] employee [who] is specifically employed to deal with sexual harassment." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 107 (3d Cir. 2009).

Here, the Plaintiff alleges that she told her supervisor about the seat incident. See Complaint ¶¶ 30, 107. He then told her he "would report the situation to [H]uman [R]esources." Id. ¶ 110.

---

[4] Moore was a Title VII case. See 461 F.3d at 349. But the New Jersey Supreme Court has relied on federal Title VII caselaw to construe the antiretaliation provision of the New Jersey Law Against Discrimination. See Roa v. Roa, 200 N.J. 555, 573-75 (2010); see also Lehmann v. Toys R Us, Inc., 132 N.J. 587, 600 (1993).

[5] See Company's Brief at 10-13; Defendants' Reply Brief in Further Support of Their Motion to Partially Dismiss Plaintiff's Amended Complaint with Prejudice ("Company's Reply") (ECF 48) at 9-10. At various places, and as to the Plaintiff's various legal theories, the Company glancingly makes other arguments, too --- for example, as to whether certain conduct can rise to the level of an adverse employment action. See Company's Reply at 3-5. But these arguments are not meaningfully enough developed, and the Company cannot carry its burden based on them.

That is more than enough to establish the Company "knew or should have known." Moore, 461 F.3d at 349 (cleaned up).

As a general matter, an employee "specifically employed to deal with sexual harassment" will "[t]ypically . . . be part of the employer's human resources . . . group." Huston, 568 F.3d at 107.

And that checks out in this case. Why would the supervisor say he was passing the report to HR, see Complaint ¶ 110, if addressing sexual harassment was not that department's responsibility? And beyond that, the complaint alleges that the Company looked to HR to conduct sexual harassment-related investigations and to assist with imposing sexual harassment-related discipline. See id. ¶¶ 89-94, 96-99, 110, 123-24.

Knowing about the alleged seat incident, the Plaintiff contends, the Company had an obligation to take "prompt and adequate remedial action," Moore, 461 F.3d at 349, but did not do so. The complaint alleges the Company "did absolutely nothing to stop [the coworker's] retaliatory conduct against [the Plaintiff] once [the Company] learned about it [on the day of the seat incident]." Id. ¶ 112.

The Company's response is that it did take remedial action. See Defendants' Brief at 13. But what the Company cites for that idea is that Company employees heard out the Plaintiff and passed her information along to the right people in the organization --- not that they acted to fix the situation. See id. Hearing out a complaint and taking steps to remedy it --- these are different things. Common sense makes that clear, and so does the caselaw. See, e.g., Christian v. Umpqua Bank, 984 F.3d 801, 812 (9th Cir. 2014) (holding a reasonable jury could conclude that a bank did not take "prompt, appropriate, and effective action" after learning about a customer's harassment of an employee because it took no concrete steps to remedy the issue); see generally Young v. Temple Univ. Hosp., 359 F. App'x 304, 308 (3d Cir. 2009) ("an employer's remedial action is adequate if it is reasonably calculated to end the harassment") (cleaned up).

\*   \*   \*

The Plaintiff also claims the Company is liable on a second New Jersey Law Against Discrimination retaliation theory --- for the Coworker's post-seat-incident verbal statements to various

5

colleagues, which, the Plaintiff contends, were retaliation for her reports to the Company about his alleged conduct. See Plaintiff's Brief at 15.

But an employer cannot be liable in a situation like this one where it took "prompt and adequate remedial action." Moore, 461 F.3d at 349 (cleaned up).

And on the Plaintiff's allegations, the Company did just that.

As to "prompt[ness]," the Company's HR director spoke to the Plaintiff within hours of receiving her verbal-comments complaint, see Complaint ¶ 119, quickly kicked off an investigation, see id. ¶ 123, and wrapped it up in just over a week. See id. ¶ 124.

This is certainly fast enough. See Huston, 568 F.3d at 110 (holding that employer that "launched an investigation on the very day [the plaintiff] filed her complaint" had "responded promptly"); accord, e.g., Hemphill v. City of Wilmington, 813 F. Supp. 2d 581, 589 (D. Del. 2011) (holding: employer that "temporarily removed [the plaintiff] from the allegedly hostile environment and initiated an investigation" immediately upon receiving a complaint engaged in "prompt . . . remedial action").

And the "adequate" box is checked, too.

"A remedial action that effectively stops the harassment will be deemed adequate as a matter of law." Knabe v. Boury Corp., 114 F.3d 407, 411 n.8 (3d Cir. 1997).

Here, the verbal-comments investigation corroborated the Plaintiff's allegations. Company officials told the Coworker "that this type of behavior was not acceptable," Complaint ¶ 124 --- and there are no further allegations from the Plaintiff as to any workplace difficulties during the ten months that followed, her last at the Company. For those months, any misconduct was "effectively stop[ped]," Knabe, 114 F.3d at 411 n.8, and so the Company cannot be liable. See, e.g., Morrison v. Carpenter Tech. Corp., 193 F. App'x 148, 153 (3d Cir. 2006); Mlinarchik v. Brennan, 2018 WL 4922925, at *6 (W.D. Pa. Oct. 10, 2018); Rader v. Whitehall/Coplay Sch. Dist., 2008 WL 2468361, at *6 (E.D. Pa. June 18, 2008).

*   *   *

<u>Third</u>, the Plaintiff alleges the Company retaliated against her by "allow[ing the Coworker] to continue working with [the] Plaintiff even after [she] reported his sexual misconduct against her to [the Company]." Plaintiff's Brief at 11-12.

For the last ten months that the Plaintiff worked at the Company, this claim fails. At the beginning of that period, the Coworker was investigated, <u>see</u> Complaint ¶ 123, told that his conduct was out of bounds. <u>See</u> <u>id</u>. ¶ 124. And from that point forward, there was no further alleged misconduct. The Third Circuit has held that "if the remedy chosen by the employer is adequate, an aggrieved employee cannot object to that selected action." <u>Knabe</u>, 114 F.3d at 414. Among other things, she cannot claim that an allegedly harassing colleague "should have been transferred . . . or fired." <u>Id</u>.

But for earlier periods, it is not clear how the Company's response can be described, for now, as adequate as a matter of law. Remedial steps were taken by the Company (moving seats, for example) but issues persisted (verbal comments to colleagues, for example).

\*   \*   \*

In Count II of her complaint, the Plaintiff seeks to hold the Company liable for alleged retaliatory harassment by the Coworker, and the Company moves to dismiss that count.

The motion is granted to the extent that it rests on allegations for the period from September 20, 2023 until the end of the Plaintiff's employment with the Company. As to that period, the Company took remedial action that was effective as a matter of law. And for that period it was under no obligation to do more --- to fire the Coworker, or to transfer him.

Otherwise, the motion at ECF 43 is denied.

IT IS on this 27th day of January, 2026. **SO ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

7